IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHERRY ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV310 |
| | ) | |
| ROWAN VOCATIONAL OPPORTUNITIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Sherry Robbins, brings this action against Defendant, Rowan Vocational Opportunities, Inc. ("RVO"), alleging race discrimination and retaliation in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"), and seeking punitive damages. (ECF No. 30.) Before the Court is Defendant's Renewed Motion for Summary Judgment. (ECF No. 36.) For the reasons set forth below, the Court grants Defendant's motion.

## I.     BACKGROUND

RVO is a non-profit rehabilitation facility that provides disabled individuals with work adjustment services and life skills, as well as vocational training and long-term or transitory employment. (ECF No. 38-6 ¶ 2.) On September 24, 2009, Plaintiff, who is African-American, was hired by RVO as a Community Alternative Program ("CAP") Technician. (*See* ECF No. 30 ¶ 3; ECF No. 38-2 at 7; ECF No. 38-4 at 22.) Plaintiff was later promoted to Innovations Program Manager. (*See* ECF No. 38-2 at 8–9; ECF No. 38-4 at 19.)

In the fall of 2014, a consumer lodged a complaint against RVO's then-Executive Director, John Williams ("Williams"), alleging inappropriate touching by Williams. (ECF No. 38-2 at 10.) The North Carolina Department of Health and Human Services ("DHHS") and the local police launched investigations into the allegations, during which Williams was placed on administrative leave. (*Id.* at 11, 14.) Garrett Yelton ("Yelton") who, at the time, was serving as the Director of Operations at another facility, Cabarrus Vocational Opportunities, was selected to serve as RVO's acting Executive Director. (*Id.* at 15; ECF No. 38-5 at 8; *see* ECF No. 38-6 ¶ 2.) In May 2015, Yelton became RVO's Executive Director. (ECF No. 38-2 at 15.)

In May 2015, Yelton informed the RVO staff of an available Qualified Professional ("QP") position within the facility. (ECF No. 38-3 at 6; ECF No. 38-6 ¶ 4.) Plaintiff submitted her resume to Yelton to apply for the position. (ECF No. 38-3 at 5, 6.) Yelton informed Plaintiff, via email dated June 24, 2015, that he was unable to consider her for the QP position because, based on her resume, she did not have the DHHS-mandated[1] work experience necessary for the position. (ECF No. 38-4 at 12, 16.) "[T]he only two candidates who met the state-mandated qualifications were then-CAP/Innovations Technician Jermar Hoke (African-American) and an external candidate, Brandy Blackwell (Caucasian)." (ECF No. 38-6 ¶ 4.) Of these two candidates, Yelton ultimately selected Brandy Blackwell for the position. (*Id.* ¶ 8.)

---

[1] In North Carolina, facilities and agencies that provide developmental disability services are governed by DHHS regulations. These regulations require that, among other things, a QP must have a "bachelor's degree in a human service field," and "two years of full-time, post-bachelor's degree accumulated . . . experience," working with the population served by these agencies. 10A N.C. Admin. Code 27G.0104(19)(c).

On May 4, 2015, Plaintiff was absent from work, without providing advance notice to Yelton or RVO's human resources department. (*See* ECF No. 38-2 at 20.) Approximately two weeks later, on May 18, 2015, Yelton met with Plaintiff and issued a written warning for having taken "unapproved time off for illness on 5/4/2015." (ECF No. 38-4 at 2–3.) The warning also set forth improvements which were "immediately" required of Plaintiff, including that Plaintiff follow RVO's attendance policy. (*Id.* at 2.) Plaintiff refused to sign the warning, (*id.* at 3), and subsequently filed a grievance with RVO's Board of Directors ("Board") against Yelton, (*id.* at 4; ECF No. 38-2 at 21; ECF No. 19-5 at 2). In response to Plaintiff's grievance, the Board met with Plaintiff, and she ultimately agreed with the Board's assessment that her communication issues with Yelton needed to improve. (*See* ECF No. 38-2 at 23–27.)

On July 6, 2015, Yelton met with Plaintiff to discuss her Employee Performance Report ("performance evaluation"). (*See* ECF No. 38-4 at 5–7.) Plaintiff's evaluation reflected an overall "Below Standard" rating. (*Id.* at 7.) Plaintiff signed her performance evaluation and noted that she disagreed with the results. (*Id.*) Plaintiff then sent an email to the Board attempting to lodge a "retaliation/discrimination grievance against . . . Yelton based on the result of [her] evaluation." (*Id.* at 9.) The next day, July 7, 2015, Stan Jordan, President of RVO's Board, responded to Plaintiff's email and informed her that, per RVO's Staff Grievance Policy, "[c]omplaints regarding performance appraisals . . . [were] <u>not</u> subject to a grievance." (*Id.* at 9.)

On July 8, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("First EEOC Charge") in which she alleged discrimination based on race and retaliation. (*Id.* at 19.) Plaintiff specifically alleged that she was "subjected to a

hostile work environment by the Executive Director," and that she was "issued disciplinary action, given a poor performance review, and denied promotion." (*Id.*)

Approximately seven months later, on or around February 12, 2016, Yelton suspended Plaintiff following a complaint from Ginger Pope ("Pope"), Executive Director of Cabarrus County Group Homes, Inc. ("CCGH"), about Plaintiff's harassing conduct towards the parent of a consumer. (*See* ECF No. 38-4 at 17–18; ECF No. 38-5 at 12–14; ECF No. 38-7.) Then, on February 16, 2016, Plaintiff filed a second Charge of Discrimination with the EEOC ("Second EEOC Charge") alleging retaliation by RVO for having filed the First EEOC Charge. (ECF No. 38-4 at 21.) Plaintiff was ultimately terminated on February 17, 2016 for conduct deemed to be "inappropriate, unprofessional and [which] demonstrate[d] a complete lack of judgment." (*Id.* at 18.) The next day, February 18, 2016, Plaintiff filed a third EEOC Charge of Discrimination ("Third EEOC Charge") alleging retaliation for having filed the First and Second EEOC Charges. (*Id.* at 22.)

Following the EEOC's issuance of its Dismissal and Notice of Rights as to the First EEOC Charge, dated January 12, 2016, (*id.* at 20), Plaintiff initiated the instant action in state court, which RVO timely removed to this Court, (*see* ECF Nos. 1, 2). At the time Plaintiff filed the instant lawsuit, her Second and Third EEOC Charges were still pending before the EEOC. (*See* ECF No. 28 at 2–3 (citing ECF No. 17 at 7–8).) On April 17, 2017, the EEOC issued Right to Sue letters as to Plaintiff's Second and Third EEOC Charges. (*See* ECF No. 30 ¶¶ 30, 32, 33.) Less than one month later, Plaintiff moved to amend her Complaint to add a fourth cause of action based on the claims of retaliation raised in her Second and Third EEOC Charges. (*See* ECF Nos. 21, 21-1.) Plaintiff's motion to amend was filed during the

pendency of Defendant's initial Motion for Summary Judgment. This Court granted Plaintiff's motion to amend and stayed RVO's Motion for Summary Judgment to allow for limited supplemental discovery with respect to the issues raised in Plaintiff's newly-added claim. (*See* ECF No. 28.) Following the close of the limited supplemental discovery period, RVO filed a Renewed Motion for Summary Judgment seeking dismissal of Plaintiff's Amended Complaint in its entirety. (*See* ECF No. 36.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials," *id.* at 248, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The summary judgment inquiry thus scrutinizes

the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## III.  DISCUSSION

### A.  Racial Discrimination (First Cause of Action)

#### i.  Failure-to-Promote Claim

Plaintiff alleges that she was "denied a promotion on the basis of her race, Black, in 2015." (ECF No. 30 ¶ 5.)  Plaintiff further alleges that "[d]espite having served as the acting Qualified Professional during the candidate search period, she was not even interviewed for the permanent position" which was ultimately "filled by a person of the Caucasian race who, upon information and belief, was not as qualified as Plaintiff." (*Id.*)  Defendant argues that this claim fails as a matter of law because Plaintiff was not qualified for the QP position and has, therefore, failed to establish a prima facie case of discriminatory failure to promote. (ECF No. 38 at 8.)

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of failure to promote based on race, Plaintiff must show the following: (1) that she is a member of a protected group; (2) that she applied for the position in question; (3) that she was qualified for the position; and (4) that RVO rejected her for the position under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

"[T]he establishment of a prima facie case of employment discrimination requires proof by a preponderance of the evidence that the plaintiff was not promoted or dismissed 'under conditions which, more likely than not, were based upon impermissible racial considerations.'" *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1286 (4th Cir. 1985) (quoting *Young v. Lehman*, 748 F.2d 194, 196 (4th Cir. 1984)). Plaintiff can establish her prima facie case either through direct evidence or by utilizing the *McDonnell Douglas*[2] burden-shifting framework. Under this framework, once the plaintiff has established a prima facie case, the employer may rebut that case "by demonstrating that the person promoted was better qualified for the position." *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995). The burden then shifts back to Plaintiff to show that the reason provided by the employer for promoting the selected applicant was pretextual. *Id.* at 1129–30. Because the Court finds that Plaintiff has failed to bring forth direct evidence of discrimination,[3] Plaintiff must, therefore, utilize the *McDonnell Douglas* burden-shifting scheme.

Under the applicable DHHS rules, in order to serve as a QP, one must have graduated from a college or university "with a bachelor's degree in a human service field and [must have] two years of full-time, post-bachelor's degree accumulated . . . experience with the population served." 10A N.C. Admin. Code 27G.0104(19)(c). Plaintiff argues that she was qualified for the QP position because "her performance evaluations were positive, [she] performed adequately, she had obtained the college degree, and had been working with the consumers

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] "Direct evidence is evidence from which no inference is required . . . . [such as] a decisionmaker's statement that he did not promote a plaintiff due to his race." *Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 421 (E.D.N.C. 2015).

for several years." (ECF No. 19 at 4.)[4]   The Court finds these arguments unavailing in the face of evidence, including Plaintiff's own testimony, which shows that Plaintiff did not meet the state-mandated qualifications for a QP.

Yelton posted the available QP position in May 2015. (ECF No. 38-6 ¶ 4; ECF No. 38-3 at 6.)  Plaintiff had earned a bachelor's degree, nine months earlier, in August 2014.  (*See* ECF No. 38-4 at 11.)  However, as Plaintiff admitted in her deposition, at the time she applied for the position, she had not accumulated the required two years, full-time, post-bachelor's degree work experience.  (ECF No. 38-3 at 7–8; ECF No. 38-5 at 9–10.)  Plaintiff was, thus, ineligible to be considered as a candidate for the available QP position.  Plaintiff also admitted that she was not more qualified than Blackwell, the candidate who was ultimately selected for the QP position.  (*See* ECF No. 38-3 at 9 ("Q. Do you believe you were more qualified than Ms. Blackwell for the QP position?  A. No, ma'am.  Q. You don't?  A. No.").)

Plaintiff further argues that "the allegation that she was not qualified is refuted by her employment [as a QP] for another employer since leaving the Defendant's employ."  (ECF No. 40 at 5.) Plaintiff's subsequent employment as a QP at another facility does nothing, however, to change the fact that, as discussed above, *at the time Plaintiff applied* for the QP position at RVO, she did not have the state-mandated qualifications necessary for a QP— namely, two years of full-time, post-bachelor's degree work experience.  (*See* 10A N.C. Admin. Code 27G.0104(19)(c); ECF No. 38-3 at 7–8; ECF No. 38-5 at 9–10.)

---

[4] Plaintiff incorporates the arguments set forth in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed January 11, 2017, (ECF No. 19).  (*See* ECF No. 40 at 3.)

The Court, therefore, concludes that because Plaintiff has not shown that she was qualified for the QP position, she has failed to establish a prima facie case of failure to promote based on race. *See Gairola*, 753 F.2d at 1288 (finding that "[e]stablishment of the prima facie case is not a requirement that can be overlooked by the courts or sidestepped by aggrieved employees under . . . Title VII"). As such, there is no genuine dispute as to this claim, and RVO is entitled to judgment as a matter of law on Plaintiff's Title VII failure-to-promote claim.[5]

  ii.  <u>Hostile Work Environment Claim</u>

In addition to her failure-to-promote claim, Plaintiff has also asserted a Title VII hostile work environment claim. Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001). To survive summary judgment on a race-based hostile work environment claim, Plaintiff must show that a reasonable jury could find that the alleged conduct was "(1) unwelcome; (2) based on her race; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015).

---

[5] Given the Court's finding that Plaintiff has failed to carry her burden of establishing a prima facie case of failure to promote based on race, the Court need not consider RVO's additional arguments that there was a "legitimate, non-discriminatory reason for its decision to hire Ms. Blackwell [instead of Plaintiff], and Plaintiff cannot prove pretext," (ECF No. 38 at 9). *See Sutton v. Cree, Inc.*, 172 F. App'x 485, 486 (4th Cir. 2006) (per curiam) (affirming the district court's grant of summary judgment on plaintiff's failure-to-promote claim because plaintiff was not qualified for the promotion and thus, failed to establish a prima facie case of discrimination); *Kinney v. Wash. Gas Light Co.*, No. 95-1064, 1996 WL 19214483, at *2 (4th Cir. Apr. 22, 1996) (per curiam) (explaining that "[i]n the instant case, we need not move beyond the first level of the *McDonnell Douglas* inquiry because [plaintiff] has failed to establish a prima facie case of employment discrimination).

Plaintiff appears to allege that she was subjected to the following harassing conduct: (i) Yelton's management style, including "excessive scrutiny of her performance," and "reduced communication with the management team," (ECF No. 30 ¶ 8; ECF No. 38-2 at 25–26); (ii) being tasked with training the candidate selected for the available QP position, (ECF No. 30 ¶ 8); (iii) receiving a "Below Standard" rating from Yelton on her July 2015 performance evaluation, (*see* ECF No. 30 ¶ 18; ECF No. 38-2 at 32; ECF No. 38-4 at 7); (iv) receiving a written warning in May 2015 for violating RVO's attendance policy, (*id.* at 34); (v) receiving an inadequate response from the Board to her grievances about Yelton, (ECF No. 38-3 at 15–16); and (vi) being denied the QP position, (ECF No. 30 ¶¶ 5–7; *see* ECF No. 38-2 at 32–33).

RVO argues that Plaintiff's hostile work environment claim should fail because she cannot show that the alleged harassing conduct was based on her race, nor can she show that the alleged conduct was sufficiently severe or pervasive to constitute a hostile work environment. (ECF No. 38 at 12–15.) The Court agrees.

        *a.*    *Harassment based on race*

To establish race-based harassment, Plaintiff must show that "but for" her race, she would not have been the victim of the alleged discrimination. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Plaintiff must provide "legally sufficient evidence" of race discrimination to "transform an ordinary [workplace] conflict . . . into an actionable claim of discrimination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Here, viewing the evidence in the light most favorable to Plaintiff, there is simply no indication that any of the alleged harassing conduct by Yelton or the Board was due to animosity towards Plaintiff because of her race.

As to the allegedly harassing conduct by the Board, the record is devoid of any credible evidence that "but for" Plaintiff's race, the Board would have handled Plaintiff's grievances in a different manner. Plaintiff contends that the Board's actions in response to her complaints about Yelton were "discriminatory" because "they pretty much brushed me off like a piece of lint" and "nobody wanted to sit down and actually listen [to] me." (ECF No. 38-3 at 15–16.) The record shows however, that, in response to Plaintiff's initial grievance in May 2015 regarding the written warning she received from Yelton, the Board met with Plaintiff. (ECF No. 38-2 at 23.) Present at the meeting with Plaintiff were Stan Jordan ("Jordan"), President of the Board, as well as Board members, Ned Robinette and Ann Medlin. (*Id.*) As Plaintiff testified, during that meeting, she discussed the circumstances surrounding her warning as well as her feelings of being harassed by Yelton, and she ultimately agreed that her communication with Yelton needed to improve. (*Id.* at 23–27.) Additionally, in response to Plaintiff's subsequent e-mail to the Board seeking to file a grievance against Yelton for the "Below Standard" performance evaluation she received in July 2015, Jordan, on behalf of the Board, responded to Plaintiff. (*See* ECF No. 38-4 at 9.) In his response, Jordan informed Plaintiff that, per RVO's Staff Grievance Policy, "[c]omplaints regarding performance appraisals . . . are <u>not</u> subject to a grievance." (*Id.*) Jordan further informed Plaintiff that he "saw the evaluation before [Yelton] presented it to [Plaintiff]" and it was completed "accurately and appropriately," and that Yelton "has the support and authority of the [B]oard and his presenting a fair and accurate evaluation . . . is not abuse of that authority." (*Id.*) While Plaintiff may disagree with the Board's handling of her grievances and complaints, this

evidence does not support a finding that racial animus motivated the Board's actions towards Plaintiff.

Similarly, there is no evidence to show that Yelton's actions toward Plaintiff were motivated by Plaintiff's race, including, as Plaintiff alleges, his increased scrutiny of her work, the July 2015 performance evaluation, the lack of communication with Plaintiff, and the written warning issued by Yelton to Plaintiff in May 2015. When asked whether Yelton ever made any racial comments that she considered discriminatory or harassing, Plaintiff responded, "No ma'am."[6] (ECF No. 38-3 at 14.) *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (finding that, on a hostile work environment claim, comments regarding the lynching of African-Americans, as well as the use of derogatory terms like "honky," and "ghetto," among others, "are enough to suggest that the [alleged] conduct was motivated by race"). Thus, without more, the evidence of Plaintiff's workplace disputes with Yelton is insufficient to prove that Yelton's conduct toward Plaintiff was motivated by race. *See also Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 143 (4th Cir. 2007) (explaining that, even if plaintiff's supervisor disliked plaintiff thereby making her job more stressful, "that fact, absent some independent evidence of racial animosity, is not sufficient to establish a prima facie [hostile work environment] claim").

---

[6] In response to a question about whether "anyone else at RVO" had ever made any comments to her that were offensive and race-based, Plaintiff testified that another individual, Robbie Russell ("Russell"), made "some racial jokes." (ECF No. 38-3 at 14.) None of Plaintiff's allegations or arguments in support of her hostile work environment claim, however, are based on any alleged comments made by Russell. Accordingly, the Court will not consider these alleged comments by Russell in its analysis.

Further, while race-based animosity could also be established by evidence of RVO's differential treatment of similarly situated white employees,[7] Plaintiff has failed to make such a showing. Plaintiff claims that, as part of Yelton's harassment, he denied promoting her to the QP position based on her race, while two white co-workers, Tamara Chisholm ("Chisholm") and Joy Martenstyn ("Martenstyn"), were "promoted to their QP positions without even holding a college degree, thus being treated more favorably than Plaintiff." (ECF No. 19 at 4; *see* ECF No. 38-2 at 32–33; ECF No. 38-3 at 8; ECF No. 38-6 ¶ 9.) To the contrary, however, the record reflects that Chisholm and Martenstyn were "not employed as QPs [at RVO] and never have been." (ECF No. 38-6 ¶ 9.) Moreover, Plaintiff even admits in her deposition that despite her own allegation, Chisholm and Martenstyn were "not called QP's." (ECF No. 38-3 at 8.)

Beyond unsupported speculation and conclusory statements, Plaintiff has failed to offer sufficient evidence that "but for" her race, she would not have been subjected to the allegedly harassing conduct by Yelton and the Board. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). At this juncture, in order to survive summary judgment, Plaintiff "must rely on more than conclusory allegations, mere speculation, . . . or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The Court, therefore, concludes that a reasonable jury would not find that the alleged incidents of harassment by Yelton and the Board were based on Plaintiff's race.

---

[7] *See Gilliam*, 474 F.3d at 142 (explaining that plaintiff was entitled to establish harassment based on race by showing that plaintiff was treated "differently than similarly situated white [co-workers] on the basis of race").

*b.    Severe or pervasive conduct*

RVO further contends that the conduct complained of by Plaintiff is not sufficiently severe or pervasive[8] to constitute actionable harassment under Title VII.  (ECF No. 38 at 14–15.)    Title VII prohibits conduct that permeates the workplace "with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  Here, Plaintiff makes no specific argument in response to this contention,[9] and fails to offer any evidence to satisfy this element of her hostile work environment claim.  Thus, viewing the record evidence in the light most favorable to Plaintiff, and considering the totality of circumstances, the Court concludes that a reasonable jury could not find that the alleged incidents of harassment were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work atmosphere.

Despite Plaintiff's conclusory assertion that she has "clearly" met her burden of establishing a prima facie case in support of her hostile work environment claim, (ECF No. 19 at 8), the Court finds that Plaintiff's evidence falls woefully short of such a showing.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (stating that Plaintiff's "own naked opinion, without more, is not enough to establish a *prima facie* case of

---

[8] To determine whether harassment is sufficiently pervasive to create an objectively hostile and abusive work environment, courts must consider the totality of circumstances including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance."  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

[9] "Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue."  *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (citing cases).

[ ]discrimination" (alteration in original) (internal quotation marks omitted)).  Plaintiff has failed to show that she was subjected to harassment because of her race, or that the alleged harassment was severe or pervasive.  As a result, RVO is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim

**B.      Retaliation (Second and Fourth Causes of Action)**

Plaintiff alleges that she was retaliated against by RVO, in violation of Title VII.  To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (alterations in original) (internal quotation marks omitted).  Here again, in the absence of direct evidence of retaliatory animus, Plaintiff may prove retaliation through the *McDonell Douglas* burden-shifting framework.  *See id.* at 249.

Plaintiff's allegations of retaliation are as follows: (i) she received a written warning on May 18, 2015, (ECF No. 30 ¶ 17); (ii) she received "a poor performance evaluation" on July 6, 2015, (*id.* ¶ 18); (iii) she was denied FMLA leave, (*id.* ¶ 28); (iv) she was suspended from her job, (*id.* ¶ 29); and (v) she was terminated, (*id.* ¶ 31).  The Court will address each retaliatory act, in turn, below.

i.      May 18, 2015 written warning and July 6, 2015 performance evaluation

Title VII specifically prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice, "or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Thus, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Opposition activity includes 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Cumbie v. Gen'l Shale Brick, Inc.*, 302 F. App'x 192, 194 (4th Cir. 2008) (per curiam) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Participation activity, on the other hand, includes making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing. *See* 42 U.S.C. § 2000e-3(a); *Laughlin*, 149 F.3d at 259.

With respect to the May 18, 2015 written warning and the July 6, 2015 performance evaluation, Plaintiff testified in her deposition that those actions were taken against her in retaliation for: (i) participating in the DHHS and police investigation of RVO's former Executive Director, John Williams; and (ii) filing a grievance with the Board following Yelton's issuance of a written warning in May 2015.[10] However, viewing the evidence in the light most favorable to Plaintiff, neither activity constitutes "protected activity" under Title VII. Here, Plaintiff participated in the police investigation into complaints regarding the alleged inappropriate sexual touching of a consumer by RVO's former Executive Director. (*See* ECF No. 38-2 at 11–12.) Because this investigation was wholly unrelated to any claims of employment discrimination based on race, color, religion, sex or national origin, Plaintiff's participation in this investigation falls outside the scope of Title VII.

---

[10] (ECF No. 38-2 at 31; ECF No. 38-3 at 20–21.)

Likewise, Plaintiff's May 2015 grievance about Yelton's written warning (stemming from her absence from work on May 4, 2015), made no mention of discrimination based on race, color, religion, sex, or national origin, so as to implicate Title VII. (*See* ECF No. 38-4 at 4.) The Fourth Circuit has explained that "Title VII is not a general bad acts statute . . . and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are *outside the scope of* Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) (emphasis added). In Plaintiff's e-mail to the Board she stated, in part, that she wanted "to file a grievance against Gary Yelton"; that she disagreed with the written warning she received from Yelton for, what she viewed as, "a complete oversight"; that she "forgot to inform Gary of an upcoming yearly doctor's appointment"; that "Gary is quick to write [her] up"; and that she didn't "feel like Gary [was] treating her fair." (*Id.*) Plaintiff also completed a "Grievance and Complaints" form related to this incident on which she makes no reference to race discrimination. (*See* ECF No. 19-5 at 2.) Additionally, Plaintiff testified that, during the grievance meeting with the Board members, there was no discussion of race discrimination.[11] (*See* ECF No. 38-2 at 25.) Because Plaintiff has made no evidentiary showing that her May 2015 grievance concerned discrimination based on race, or any other impermissible ground precluded by Title VII, the Court concludes that this act does not constitute a protected activity. *See McNair v. Comp. Data Sys., Inc.*, No. 98-1110, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999) (explaining that while Title VII's opposition clause protects

---

[11] Plaintiff also testified that during the grievance meeting, they discussed the fact that she felt she was being harassed by Yelton. Plaintiff elaborated that the "harassment" she had been experiencing from Yelton centered on difficulty adjusting to Yelton's management style and a need for better communication between Yelton and herself. (*See* ECF No. 38-2 at 25–27.)

an employee's opposition to "employment practices made unlawful *by Title VII*," it does not protect opposition "to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair"); *Harris v. Md. House of Corr.*, 209 F. Supp. 2d 565, 570 (D. Md. 2002) (finding that plaintiff did not engage in protected activity when she "merely complained of the unfair manner in which her superiors had treated her").

Further, despite Plaintiff's allegations in the Amended Complaint that she was retaliated against for voicing concerns "about the racial disparity in promotions, disciplinary actions, and work environment," (ECF No. 30 ¶ 15), and her argument that, in early 2015, she "express[ed] concerns about a racially hostile work environment under" Yelton's management, (ECF No. 19 at 5–6), Plaintiff has provided no evidence to support these allegations. At this stage, such allegations are insufficient to survive summary judgment. *See Liberty Lobby,* 477 U.S. at 256 (explaining that a party opposing summary judgment "may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial").

The Court, therefore, concludes that Plaintiff has not produced sufficient evidence for a reasonable jury to find that she has satisfied the first element of a Title VII retaliation claim, *i.e.*, that she engaged in a protected activity prior to receiving a written warning on May 18, 2015 and a poor performance evaluation on July 6, 2015.

### ii.   Alleged denial of FMLA leave

Plaintiff also claims that she was denied FMLA leave in retaliation for having filed an EEOC Charge. It is undisputed that the filing of an EEOC Charge constitutes protected activity under Title VII. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011). Further, an adverse employment action, for purposes of a Title VII retaliation claim is an action that

"might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Here, Plaintiff filed her First EEOC Charge on July 8, 2015. (ECF No. 38-4 at 19.) Plaintiff then alleges that "on or about early February, 2016, [she] requested and was denied Family and Medical Leave regarding a personal medical condition." (ECF No. 30 ¶ 28.) Despite Plaintiff's allegation, however, the evidence before the Court fails to show that Plaintiff ever actually *requested* FMLA leave which was then denied by RVO. The record reflects that Plaintiff had excused absences from work on February 9–11, 2016. (ECF No. 38-8 at 3–4.) The record further reflects that, on February 5, 2016, prior to her three-day absence from work, Plaintiff inquired about RVO's FMLA policy. (ECF No. 38-9 at 2–4.) Upon her return to work on February 12, 2016, Plaintiff requested "FMLA paper work to take to [her] doctor on the 25th of [February] to be filled out." (*Id.* at 2.) Plaintiff was subsequently terminated on February 17, (ECF No. 38-4 at 17–18), and as she testified, she "did not have to follow up for FMLA, because [she] was terminated . . . [s]o [she] wouldn't need FMLA," (ECF No. 38-8 at 5). Plaintiff argues, in her response brief, that "[s]he was informed by both Ms. [Tammy] Lemmons [of RVO human resources] and Mr. Yelton that she was not eligible" for FMLA, (ECF No. 40 at 5), yet Plaintiff offers no evidence to support this argument. Beyond evidence of Plaintiff having requested a copy of RVO's FMLA policy and the FMLA paperwork "to take to [her] doctor . . . to be filled out," (ECF No. 38-9 at 2), there is no evidence that Plaintiff ever submitted a request for FMLA leave which was denied by RVO. In fact, according to Yelton's sworn affidavit, "Sherry Robbins was never denied Family [and] Medical Leave Act leave." (ECF No. 38-6 ¶ 11.) Thus, because there was no adverse

employment action taken against Plaintiff by RVO with respect to FMLA leave, Plaintiff has failed to establish a prima facie case of retaliation based on a denial of FMLA leave.

### iii.   Plaintiff's suspension and termination

With respect to Plaintiff's claim of retaliation related to her suspension and subsequent termination, the Court finds that Plaintiff has not established a causal link between the protected activity and these adverse employment actions. "Evidence of 'the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish' the causation element of a retaliation claim because, 'by definition, an employer cannot take action because of a factor of which it is unaware.'" *Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 F. App'x 146, 153 (4th Cir. 2017) (*quoting Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)), *cert. denied*, 138 S. Ct. 1007 (2018). Based on the evidence here, the only protected activity about which RVO knew at the time of Plaintiff's suspension (which occurred on February 12, 2016) and termination (which occurred on February 17, 2016) was Plaintiff's filing of the First EEOC Charge on July 8, 2015, (ECF No. 38-4 at 19). According to Yelton's sworn affidavit, "RVO did not learn about [Plaintiff's] [S]econd and [T]hird EEOC Charges[12] until after the decision to terminate her employment had been made." (ECF No. 38-6 ¶ 10.) Plaintiff has provided no evidence to show otherwise. Thus, in order to establish a prima facie case of retaliation based on suspension and termination, Plaintiff must

---

[12] Plaintiff filed a Second EEOC Charge on February 16, 2016, in which she alleged that she was suspended in retaliation for having filed the First EEOC Charge. (ECF No. 38-4 at 21.) Plaintiff then filed a Third EEOC Charge on February 18, 2016, in which she, likewise, alleged that she was terminated in retaliation for having filed the First and Second EEOC Charges. (*Id.* at 22.)

demonstrate a causal link between these adverse actions and the filing of the First EEOC Charge.

The Fourth Circuit has held that the burden for establishing the causation element of a Title VII retaliation claim "at the prima facie stage is less onerous" than establishing causation at the pretext stage. *Foster*, 787 F.3d at 251 (internal quotation marks omitted). Accordingly, Plaintiff may satisfy this element, by demonstrating that there is close temporal proximity between RVO's adverse employment actions (*i.e.*, RVO's suspension and termination of Plaintiff) and Plaintiff's protected activity (*i.e.*, the filing of Plaintiff's First EEOC Charge).[13] *See Carter*, 33 F.3d at 460 (discussing that close temporal proximity may be "strongly suggestive of retaliatory motive and thus indirect proof of causation"). Although the Fourth Circuit has not adopted "a bright temporal line," the Court has held that a lapse of three or four months "between the protected activities and discharge was 'too long to establish a causal connection by temporal proximity alone.'" *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)).

As previously stated, Plaintiff filed the First EEOC Charge on July 8, 2015. (ECF No. 38-4 at 19.) Plaintiff was then suspended and terminated approximately seven months later on February 12, 2016 and February 17, 2016, respectively. (*See id.* at 17–18; *see also* ECF No. 38-5 at 14.) This evidence, without more, is insufficient to show that Plaintiff's suspension

---

[13] In Plaintiff's response brief she argues that the relevant protected activity to be considered is the EEOC's "issuance of the Right to Sue Letter," dated January 12, 2016, (ECF No. 40 at 3–4), rather than Plaintiff's filing of the First EEOC Charge. This argument is wholly unpersuasive as the Supreme Court has explained in dicta that a party's suggestion "that the *EEOC's* issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee" is "utterly implausible." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

and subsequent termination were causally linked to the filing of Plaintiff's First EEOC Charge based on temporal proximity. *See Pascual*, 193 F. App'x at 233 (finding that three to four months is too long to establish a causal link based solely on temporal proximity).

In instances where temporal proximity between the protected activity and alleged adverse employment action is absent, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Here, however, beyond Plaintiff's claims that her suspension and termination were in retaliation for having filed a prior EEOC Charge, Plaintiff offers no evidence of retaliatory animus by RVO during the intervening seven months to demonstrate causation. Plaintiff has therefore failed to satisfy her burden of establishing a prima facie case of retaliation based on her suspension and termination.

Because the Court finds that Plaintiff has failed to establish a prima facie case of retaliation under Title VII with respect to each of RVO's adverse employment actions, the Court need not consider RVO's additional arguments that it has stated "legitimate, non-retaliatory reasons [for] each of the purported adverse employment actions at issue, and Plaintiff cannot prove pretext." (ECF No. 38 at 18.) *See Laughlin*, 149 F.3d at 260 (affirming the district court's holding that plaintiff failed to establish a prima facie case of retaliation because plaintiff did not engage in protected activity under Title VII); *Perry*, 489 F. App'x at 644 (concluding that the employer was entitled to summary judgment on the employee's Title VII retaliation claims because the employee failed to establish a prima facie case of retaliation).

Based on the above, the Court finds that Plaintiff has failed to satisfy her burden of establishing a prima facie case of retaliation in violation of Title VII. Thus, there is no genuine

issue for trial, and RVO is entitled to judgment as a matter of law as to Plaintiff's Title VII retaliation claims.

## IV. CONCLUSION

The Court concludes that because Plaintiff has not shown that she was qualified for the QP position, she has failed to establish a prima facie case of failure to promote based on race. As such, there is no genuine dispute as to this claim, and RVO is entitled to judgment as a matter of law on Plaintiff's Title VII failure-to-promote claim. There is also no genuine dispute with respect to Plaintiff's hostile work environment claim because Plaintiff has also failed to show that any alleged harassing conduct was based on her race, or that the conduct was sufficiently severe or pervasive to constitute a hostile work environment. Finally, the Court concludes that there is no genuine issue as to Plaintiff's Title VII retaliation claims given Plaintiff's failure to establish a prima facie case of retaliation. RVO is, therefore, entitled to judgment as a matter of law as to all claims brought by Plaintiff in this action.[14]

For the reasons outlined herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendant's Renewed Motion for Summary Judgment, (ECF No. 36), is GRANTED.

---

[14] Plaintiff's Third Cause of Action is a claim for punitive damages "under the law of the State of North Carolina." (ECF No. 19 at 1; ECF No. 40 at 1; *see* ECF No. 30 ¶¶ 23–25.) North Carolina follows the general rule that punitive damages do not exist as an independent cause of action; rather, they are "mere incidents of the cause of action and . . . [i]f the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." *Hawkins v. Hawkins*, 400 S.E.2d 472, 474 (N.C. Ct. App. 1991), *aff'd*, 417 S.E.2d 447 (N.C. 1992). Accordingly, having determined that RVO is entitled to summary judgment on Plaintiff's racial discrimination and retaliation claims, the claim for punitive damages will, likewise, be dismissed.

IT IS FURTHER ORDERED that this matter is hereby DIMSISSED WITH PREJUDICE. A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 23rd day of May, 2018.

/s/ Loretta C. Biggs
United States District Judge